**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 04-127-P-H** |
| | ) | |
| **GARY H. REINER; KITTERY HEALTH CLUB** D/B/A **DANISH HEALTH CLUB; LANCE WILLIAMS;** AND **CHERYL STILWELL,** | ) | |
| **DEFENDANTS** | ) | |

**ORDER ON PENDING MOTIONS**

The defendant Gary H. Reiner has filed various pretrial motions, including a motion to suppress evidence obtained during a search of the Kittery Health Club. Each of these motions is **DENIED**.

**1. Motion for Governmental Disclosure of Rule 404(b) Evidence** (Docket Item 52). The motion is **DENIED**. The government has agreed to provide reasonable notice. That is sufficient.

**2. Motion for Additional Discovery** (Docket Item 53). The motion is **DENIED**. The motion is too broad. The defendant Reiner may, if he chooses, seek a conference with the Magistrate Judge to press and justify a more focused request.

**3. Motion for Exculpatory Evidence** (Docket Item 54). The government has affirmatively recognized its obligations under Brady and Giglio.

I assume that the government will fulfill those requirements. The motion is otherwise **DENIED**.

**4.     Motion for Disclosure of Co-Conspirator Statements Prior to Trial** (Docket Item 55). The motion is **DENIED**. The government has recognized its obligations under Fed. R. Crim. P. 16(d)(1) and the Jencks Act.

**5.     Motion for Bill of Particulars** (Docket Item 56). The motion is **DENIED**. The Superseding Indictment is adequately detailed to enable the defendant Reiner to prepare his defense, avoid unfair surprise and preclude a second prosecution for the same offense.

**6.     Motion to Reserve Defendant's Right to File Additional Motions Based on New Discovery** (Docket Item 57). The motion is **DENIED**. If there is a basis for a request to file a new motion in the future, I will consider it then.

**7.     Motion to Suppress** (Docket Item 59). The issue on the motion to suppress is whether the affidavit demonstrated probable cause to support a search warrant for the premises of the Danish Health Club, Kittery, Maine, to search for evidence of violations of 18 U.S.C. §§ 1952 (using interstate commerce in connection with unlawful activity), 1956 (money laundering), 1957 (money laundering), 2421 (transportation for prostitution), 2422 (coercion or enticement to travel for prostitution), 2423 (transporting a minor for prostitution). The defendants argue that (1) much of the information in the affidavit was stale when presented to the Magistrate Judge on June 7, 2004, and that, without the stale information, there was no probable cause; (2) the

affidavit intentionally or recklessly omitted material and exculpatory information that would have dissuaded the Magistrate Judge from issuing the warrant; and (3) much of the information came as hearsay from confidential informants and the affidavit gave the Magistrate Judge no basis upon which to assess their veracity. The motion to suppress is **DENIED**.

The standards for reviewing the issuance of a search warrant are well-known. There is a presumption in favor of the warrant's validity. I look at the totality of the circumstances and assess whether a person of reasonable caution would find a substantial basis to conclude that there was a fair probability that evidence of the alleged crime(s) would be uncovered in the search. Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997); United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996). Where informants are used, the basis for their veracity, reliability and the basis of their knowledge is relevant, but does not have to be proven solely by the affiant's knowledge of their past reliability. Instead, circumstantial evidence can also serve, and the totality of circumstances continues to govern. Gates, 462 U.S. at 241-246.

I assume, without deciding, that the individual defendant here has standing to attack the warrant. I do not address the government's argument that Leon's good faith exception could also sustain the search even if the warrant were invalid. United States v. Leon, 468 U.S. 897, 919-21 (1984).

### *(a) Staleness*

It is true that much of the information in the application was quite dated,

3

some going back as far as the 1980s and 1990s, Affidavit of Rodney S. Giguere ¶¶ 10, 12-15 (Docket Item 102), and that the direct "inside" evidence of prostitution goes forward only to 2002.  That does not necessarily make the historical information irrelevant.  But I will perform my analysis of whether probable cause existed by looking primarily at the most recent relevant information and then the other information in the context of the contemporaneous information.[1]  The test is whether as of the date of the warrant's issuance, June 7, 2004, there was probable cause to believe that the search would reveal evidence of the crime(s) described.  See Zayas-Diaz, 95 F.3d at 113.

According to the Giguere Affidavit, the Danish Health Club ("DHC" or "Club") ran advertisements in "Xtreme" Magazine as recently as December, 2003.  The cover page of that magazine, a photocopy of which is attached to the affidavit, describes itself as "Guide to Local Adult Entertainment" and is labeled "New England Edition December 2003."  The *Xtreme* cover page features "The Voodoo Sex Queen" and describes the magazine's contents as: "Inside: Escorts Porn Stars Strippers."  The Affidavit states that the December issue contains "a three-page advertisement for the DHC with numerous full color photographs of the women at the DHC. . . .  The DHC's masseuses are shown in short skirts in one photograph, and are wearing what appear to be cheerleader uniforms in

---

[1] The affidavit unhelpfully refers to some information as being in FBI reports.  See, e.g., Aff. of Rodney S. Giguere ¶ 16.  There is no way to assess the utility or reliability of information with only that identification, and I do not rely upon it.

4

another."[2]  Id. ¶ 24.  The women in the photographs are masked, and the text invites: "Unmask the Pleasures Within."  Id.  A caption under the cheerleader image states: "Relive Your High School Fantasy."  Id., Ex. A.  The masked women are also shown in Santa Claus-related clothing and the advertisement shows a standing Santa Claus.  The text describes the Club as a place "[w]here even Santa comes to lighten his load."  Id.

According to the Affidavit, the Club also advertised a "relaxation rub" in *The Portland Phoenix* of March 12 and April 2, 2004.  These advertisements were located in a section of the magazine labeled "Adult Services" under the subheading "Escorts."[3]  Id. ¶ 25 and Ex. B.

Finally, there was a DHC advertisement ("For the Elegant Touch") in the April 23, 2004, *Boston Phoenix*.  According to the Affidavit, the advertisement appeared in a section of the magazine entitled "Adults—Clubs & Spas, Escorts, Man to Man, Phone Sex, Strippers, Wild Side."  Id. ¶ 25 and Ex. C.  From the exhibit, it appears that the advertisement is located in the "Adult Services" section under the heading "Clubs & Spas."

With these advertisements, the Magistrate Judge could easily find probable cause to conclude that sexual services were being offered at the Danish Health Club in June, 2004.  Information about payment for such

---

[2] The attached photocopies of the pages in question, Exhibit A, are of extremely poor quality, so that much of the photocopy is black.  But observation confirms that in one picture women are in cheerleading regalia and that other pictures show at least a couple of women in short skirts (it is difficult to determine what others are wearing).  Women in several photographs appear to be wearing masks.

[3] Whether or not the defendants could control where the magazine places advertisements, the Magistrate Judge could reasonably consider their location in making the probable cause determination.

sexual services and relevant interstate activity is all that would be necessary to justify a warrant to search the premises for evidence of commission of at least one of the listed federal offenses.

Given these advertisements that are approximately contemporaneous to the warrant application of June 7, 2004, slightly more distant but still recent historical data were also relevant.[4] In that regard, the affidavit revealed that on July 11, 2003, at 11:09 a.m. a car registered to Lance Williams of Revere, Massachusetts, arrived at the Danish Health Club, driven by a woman who entered the Club and remained there until surveillance ended at 3:02 p.m. Id. ¶ 30. A confidential source stated that Lance Williams was her pimp when she worked as a prostitute at the Club beginning sometime in 2000 when she was under the age of eighteen and continuing "for several months." Id. ¶ 20. That confidential source then lived with Lance Williams in Massachusetts. Id. ¶ 32(E). She detailed the prices the Club charged at that time for various sexual services. Id. ¶ 20(B). A male confidential source stated that he was a regular customer obtaining sexual services from prostitutes at the Danish Health Club from 1992 until December of 2002. Id. ¶ 21.[5] He said that he

---

[4] The Affidavit says that the FBI performed thirty randomly selected days of surveillance before and after April of 2002, including in July 2003. Id. ¶ 27. Unfortunately, it is not specific about the "before and after" dates and does not state what the FBI observed in July 2003. Instead, the agent summarizes "patterns" of activity based upon reviewing the FBI records, and undated discussions with another agent and undated personal observations of the Club. Id. ¶ 28. I do not rely upon those assertions.

[5] Another confidential source, interviewed as a victim of criminal conduct, not as a target, stated that Williams and a man named Jones told her that they were pimps, using women working in Maine, and that they asked her to prostitute for them. She said that she saw three women give Williams $1,500 cash that they earned at a massage parlor in Maine. Unfortunately there are no dates associated with these allegations, only the date of the interview. Id. ¶ 18. I therefore do not rely on the information. (The defendant also asserts that *(continued next page)*

6

paid $200 to a certain prostitute each time he visited the Club up through July 2002.[6]  Id. ¶ 21(B).  Another woman told a Massachusetts police officer in June 2001 that she had been working as a prostitute at the Danish Health Club since February 2000.[7]  Id. ¶ 19.  An IRS agent's internet search on January 30, 2004, turned up nine descriptions of sexual encounters with Danish Health Club attendants.  Id. ¶ 26.  Although the only specific example given in the affidavit is a June 30, 2000, entry, that entry is relevant to probable cause given the ongoing pattern of conduct that the other evidence demonstrated.  There was certainly no suggestion that these activities had come to an end.  Moreover, the affidavit stated that analysis of bank records showed that from 1999 through October 2003 about $4,000,000 in *cash* was deposited into the Club's checking account, id. ¶ 42(A), an amount of cash that certainly contributes to the probable cause finding, given all the other evidence.  Collectively, the information just described furnished abundant probable cause that prostitution, i.e., sexual services for payment, was going on at the Club.

The Club's business checking account records for 1999 through October 2003 revealed over $1,000,000 in credit card settlements using interstate commerce.  Id. ¶ 31.  An analysis of the thirty most frequently charged credit card numbers revealed that all but two had billing addresses outside Maine.

---

the prostitution activities were in Portland, not Kittery.)  I also do not rely on assertions that there was a prostitution ring operating out of Boston.

[6] The named prostitute's vehicle was observed (by registration check) in the FBI surveillance described in footnote 4.  Id. ¶ 29.

[7] The Affidavit says that eleven female employees of the Alpha Club in Hartford, Connecticut, a house of prostitution, as of October 8, 2003, were also employees at the DHC.  Unfortunately, no date is provided for when they worked at the DHC.  Aff. of Rodney Giguere ¶ 22.

7

Id. ¶ 32(D). A May 18, 2003, bill from Verizon Communications revealed that DHC incurred advertising charges for yellow page directory advertisements in New Hampshire (Portsmouth, Manchester and Nashua) and Massachusetts (Boston, Lowell, Worcester, Haverhill and Newburyport).[8] Id. ¶ 33(B). During the week of April 1, 2002, through April 7, 2002, agents observed approximately 249 customer vehicles arrive at the Club. Only twenty-two of those vehicles were registered in Maine (most were registered in New Hampshire or Massachusetts). Id. ¶ 32(C). That evidence furnished probable cause for an ongoing use of interstate commerce to carry on the business of prostitution, an unlawful activity.

### *(b) Omission of Material Exculpatory Information*

The defendant Reiner argues that the affidavit recounted law enforcement suspicion of prostitution activities going back some twenty years and confidential informant accusations, but failed to include the following material and exculpatory information: that the Town police or the York County district attorney regularly concluded that the accusations were unfounded or that there was no basis on which to prosecute; that previous charges against particular masseuses had been dismissed; that some of the prostitution activities recounted by the confidential sources occurred in Portland, not Kittery; that massage activities were heavily regulated by the Town of Kittery;

---

[8] I draw no inference from the statement in paragraph 37 of the affidavit that charge slips for this enterprise dated March of 1998 and June of 2000 reflected that the merchant's name then was K and D Pub, whereas in May 2004 the agent found no listing for that enterprise. Given the difference in dates, the later lack of listing has little probative value.

8

and that the Town collected a large amount of data about the masseuses at the Club.

If there is intentional or reckless omission of relevant information, I nevertheless assess whether supplying the information would change the determination of probable cause. Franks v. Delaware, 438 U.S. 154, 171-72 (1978). I conclude here that it would not.

The texts of the contemporaneous advertisements, the informants' relatively recent statements, the cash deposits, the heavy out-of-state traffic and the over-all revenues furnished probable cause to issue the warrant for these Kittery premises even with the information that local authorities had decided not to proceed in the past, that some prostitution activities went on in Portland, and that the Town of Kittery made efforts to regulate the business.

### *(c) Confidential Sources*

The case law I have cited makes clear that the determination of probable cause is based upon the totality of the circumstances. Although information about the veracity of a confidential source is helpful, it is not the sole test. Here all the surrounding facts and circumstances I have described furnished the Magistrate Judge a sufficient basis for concluding that the assertions of DHC prostitution activities by confidential informants were credible. See United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996) (noting that one of the factors contributing to a probable cause determination is the veracity or probable knowledge of an informant, but that "none of these factors is indispensable; thus, stronger evidence on one or more factors may compensate

9

for a weaker or deficient showing in another"); United States v. Schaefer, 87 F.3d 562, 566 (1st Cir. 1996) ("While an informant's truthfulness and basis of knowledge are 'highly relevant in determining the value of his report, . . . 'these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case.").

The confidential informants all provided information that prostitution was taking place at the DHC, information that was consistent with the nature of DHC advertising. Three of the informants said that the DHC charged seventy dollars per hour for a room, an amount consistent with the great majority of credit card transactions processed at the DHC. Surveillance of the parking lot showed that vehicles remained from one to one and one-half hours. Several of the confidential informants provided information that certain individuals (known by law enforcement to be registered with the Town of Kittery as massage therapists working at DHC) were prostitutes. The large cash deposits made to DHC-associated accounts were consistent with the informants' assertions that prostitution was taking place. The presence at the Club of vehicles registered to people identified as participants in the prostitution business was further corroboration. Finally, the similarities in the reports of the informants (obtained at different times and places) gave them a measure of reliability.

**8. Motion to Sever Counts Four, Five and Six of the Superseding Indictment** (Docket Item 60). The motion to sever is **DENIED**. The "principle that guides any severance analysis [is that] without a 'serious risk that a

10

joinder would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence,' defendants charged in the same indictment should be tried together." United States v. Houle, 237 F.3d 71, 75-76 (1st Cir. 2001) (reasons for the principle are to avoid inconsistent verdicts and conserve judicial resources). Fed. R. Crim. P. 14(a) therefore leaves determination of the risk and any remedy to the "sound discretion" of the trial judge. Zafiro v. United States, 506 U.S. 534, 539 (1993). Ultimate determination of the risk of prejudice requires that I actually hear the evidence that is material to the various counts. But at this time, based upon the written submissions in the parties' legal memoranda, I am satisfied that a curative instruction, if requested, can ensure that the jury does not hold against the defendant Reiner conduct by the defendants Williams, Stillwell and Kittery Health Club concerning prostitution of a minor if the evidence does not show that Reiner had any knowledge of or responsibility for that particular conduct.

**9.** **Motion *in Limine* #1** (Docket Item 61). This motion in limine is **DENIED** on the same basis as the motion to sever.

**10.** **Motion for Speedy Trial** (Docket Item 62). The motion is **DENIED**. It is the defendant Reiner's motions that have changed the trial date.

**11.** **Defendant Kittery Health Club, Inc. d/b/a The Danish Health Club's Joinder in Motions of Defendant Gary H. Reiner** (Docket Item 65). The motion for joinder is **GRANTED**. The rulings on the defendant Reiner's motions (Docket Items 52, 53, 54, 55, 56, 57, 59, 61 and 62) are applicable to

11

the corporate defendant. I note that in its motion, the corporate defendant merely seeks to join arguments made by the defendant Reiner. I therefore do not consider separate arguments that it might make. (I am not suggesting that there are any such arguments.)

**SO ORDERED.**

**DATED THIS 17TH DAY OF AUGUST, 2005**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**